***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Phillips, and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive *Page 2 
further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission affirms with modifications the Opinion and Award of Deputy Commissioner Phillips.
 EXHIBITS
1. Stip. Ex. #1: Blue Notebook containing Industrial Commission Forms, Medical Records and Discovery
2. Stip. Ex. #2: Certificates of Insurance, Kapstone Kraft Paper Insurance Requirements, Defendants, Sentry Insurance and Kapstone Kraft Paper Form 61, Plaintiff's Response to Def., Kapstone Kraft Paper and Sentry Insurance First Set of Interrogatories
3. Stip. Ex. #3: Medical Bills
4. Stip. Ex. #4: NYSIF Certificates of Workers' Compensation Insurance
5. Plaintiff's Ex. #1, 2, 4 and 5: Photographs
6. Defendant NYSIF Ex. #1: Application for New York Workers' Compensation and Employers' Liability Insurance
 *********** ISSUES
PLAINTIFF: a. Which Defendant(s) and/or entities are responsible for paying for Plaintiff's compensable workers' compensation claim?
 b. What benefits, monetary and/or medical, is Plaintiff entitled to receive as a result of his partial or total disability? *Page 3 
 c. Whether Defendant(s) are in violation and/or contempt of the Order entered by Deputy Commissioner Adrian Phillips on November 20, 2009, and if so, to what, if any, sanctions or penalties should be imposed?
 d. What amount, if any, is Plaintiff's counsel entitled to recover for the initial ten hours of time found to have been expended by Deputy Commissioner Adrian Phillips in her November 20, 2009 Order?
 e. Whether Defendant(s) should be penalized and/or sanctioned for its failure to procure workers' compensation coverage under N.C. Gen. Stat. §§ 97-93, 97-94 and 97-19, and if so, in what amount?
 f. Whether Defendant(s) should be penalized and/or sanctioned for providing a false certificate of coverage and if so, in what amount?
 g. Whether Defendant(s) should be penalized and/or sanctioned for its failure to cooperate in the investigation and procurement of benefits under N.C. Gen. Stat. §§ 97-18 and 97-19, and if so, in what amount?
 h. Whether Defendant(s) are in violation of N.C. Gen. Stat. § 97-12 and if so, whether Plaintiff's compensation payments should be increased by 10%? This issue is now withdrawn.
 i. Whether Plaintiff is entitled to attorney fees for the unreasonable denial of this claim pursuant to N.C. Gen. Stat. § 97-88.1 and if so, in what amount?
 j. What other benefits, if any, is Plaintiff entitled to receive?
DEFENDANTS DENROSS DENNIS BARRETT: *Page 4 a. Whether Defendant-Denross Contracting US, Inc., was subject to the North Carolina Workers' Compensation Act by regularly employing three or more employees in the same business within the State?
 b. Whether Defendant-New York State Insurance Fund (NYSIF) should be required to provide workers' compensation insurance coverage under the North Carolina Workers' Compensation Act?
 c. Whether Defendant KapStone was a statutory employer and was in compliance with N.C. Gen. Stat. § 97-19?
 d. Whether Deputy Commissioner Phillips should vacate the November 20, 2009 Order?
 e. Whether the individual named Sandra Barrett is a proper party to this action?
 f. What is the correct method of calculating Plaintiff's average weekly wage under N.C. Gen. Stat. § 97-2(5)?
 g. Defendant Denross Contracting US, Inc., reserved the right to amend or list additional issues.
DEFENDANTS KAPSTONE KRAFT PAPER SENTRY INSURANCE: a. Whether Denross Contracting was an independent contractor of KapStone at the time of Plaintiff's injury?
 b. In the event that Denross is not found to be an independent contractor of KapStone, whether Defendant KapStone complied with N.C. Gen. Stat. § 97-19? *Page 5 
 c. Whether NYSIF should be estopped from denying Plaintiff's claim for compensation?
 d. Whether Plaintiff's issue (h) is ripe for a determination because there have been no final findings of OSHA to date?
 e. KapStone and Sentry reserved the right to amend or list additional issues.
DEFENDANT NEW YORK STATE INSURANCE FUND (NYSIF): a. Whether NYSIF is subject to jurisdiction under the North Carolina Workers' Compensation Act?
 b. Whether NYSIF should be dismissed as a party to this claim?
 c. If NYSIF is subject to jurisdiction under the Act, whether NYSIF provided workers' compensation insurance for Denross Contracting US, Inc., in North Carolina?
 d. NYSIF reserved the right to amend or list additional issues.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties as:
 STIPULATIONS
1. The parties stipulate and agree that Plaintiff suffered a compensable injury on or about October 3, 2009, while performing work in the Kapstone Roanoke Rapids, North Carolina facility when a catwalk collapsed and Plaintiff fell approximately 18 feet.
2. The parties stipulate and agree that Plaintiff's last day worked for Defendant-Employer was October 3, 2009, the date of injury.
 *********** *Page 6 
Based upon the foregoing Stipulations and a preponderance of the evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of hearing before the Deputy Commissioner, Plaintiff was 39 years of age and employed by Denross Contracting, U.S., Inc. Plaintiff has a tenth grade education. Plaintiff's occupational history includes over 20 years of work in the construction field. Prior to his employment with Denross, Plaintiff was enrolled in truck driving school.
2. Denross is a New York State Corporation incorporated in 1996 by Dennis Barrett. Denross specializes in providing maintenance services to paper machines throughout the United States and Canada. In April 2009, Denross worked at Grief, Inc. in Virginia. Denross hired three employees who resided in North Carolina for this job. The employees worked 52 hours for approximately one week although the work was not performed in North Carolina, and the employees were not guaranteed future work.
3. Defendant, Kapstone Kraft Paper, and Defendant Denross, entered into a contract wherein Denross cleaned and painted Kapstone's number three paper machine located at Kapstone's Roanoke Rapids mill located in North Carolina. Denross provided all tools and management of the project, without input or requiring direction from Kapstone. Kapstone paid Denross a lump-sum payment for his services. A due date was agreed upon for the services to be completed.
4. Denross' owner, Dennis Barrett, hired 24 employees, including Plaintiff to complete the cleaning and painting. The project was scheduled to take five days, or 60 hours, wherein Plaintiff would work 12 hour days, receiving $16.00 per hour for the first 40 hours and $24.00 per hour for the extra 20 hours of overtime. Plaintiff was informed that if he performed *Page 7 
well on this job, he could become a repeat employee of Denross. Eighteen to 19 of the other workers hired on the Kapstone/Denross job were repeat employees of Denross. Plaintiff's lodging was paid for by Denross.
5. On October 3, 2009, the first day of work, Plaintiff was standing on a catwalk, roughly 18 feet above the operating floor, when it collapsed. Plaintiff fell to the floor, sustaining serious bodily injuries, including a right calcaneus (heel) fracture, a hip contusion, broken ribs, and a right knee injury.
6. After Plaintiff's accident, on October 3, 2009, emergency medical providers transferred Plaintiff to Halifax Hospital, where he was placed in a splint and referred to an orthopedic surgeon. Plaintiff returned to Salisbury and presented to Dr. Stephen Furr, who diagnosed Plaintiff with a "right calcaneus severely comminuted fracture with Bohler's angle" and a right hip contusion. Plaintiff's Achilles tendon was shortened due to the heel fracture, causing Plaintiff to lose the normal anatomical angle of his foot.
7. Following the accident, Dr. Furr put Plaintiff in Jones dressing and a 3D boot with instructions to elevate his foot maximally to reduce swelling. Dr. Furr noted that Plaintiff had formed blisters and pressure issues with respect to his foot. Dr. Furr warned that Plaintiff could develop compartmental syndrome which could cause him to lose function of his nerves, muscles, or the foot itself.
8. Plaintiff returned to Dr. Furr on October 15, 2009. Dr. Furr performed two surgeries. During the first surgery, Dr. Furr inserted a pin to correct the Bohler's angle in Plaintiff's right heel. During the second surgery, Dr. Furr drained 16-20 ounces of blood in Plaintiff's hip and inserted a drain to collect future fluid build-up. Dr. Furr testified that Plaintiff was to remain non-weight bearing with his foot elevated at all times to avoid accidentally hitting *Page 8 
his leg which would have caused significant pain and possibly shifted Plaintiff's pin. Dr. Furr testified that Plaintiff would have experienced significant pain in his right foot whether he was ambulating or not. The hip drain was removed on October 19, 2009.
9. Plaintiff returned to Dr. Furr on October 27, 2009, to examine the operation sites. On November 17, 2009, Dr. Furr removed the pin in Plaintiff's heel and ankle. Plaintiff was instructed to remain non-weightbearing. On December 2, 2009, Plaintiff underwent further x-rays and a bone scan which revealed additional injuries including a fracture to Plaintiff's seventh and eighth left rib and degenerative changes to both knees.
10. Dr. Furr stated to a reasonable degree of medical certainty that the left rib fractures were caused by the October 3, 2009 fall and that the "pickup of degenerative change" in the right knee was exacerbated by the fall.
11. On December 17, 2009, Plaintiff returned to Dr. Furr for review of Plaintiff's x-rays. The x-rays revealed that Plaintiff's calcaneus was still "smashed" but that his Bohler's angle was stable. Dr. Furr allowed Plaintiff to place weight on his right leg, as tolerated, allowing him to drive his own vehicle with his non-surgical foot. Dr. Furr testified that he would not have considered Plaintiff very mobile during this time. Dr. Furr testified that Plaintiff would have been able to walk with the assistance of crutches or a walker.
12. Plaintiff testified that from the date of injury, October 3, 2009, until December 26, 2009, he continued to experience significant pain. Plaintiff has remained under Dr. Furr's instructions to remain non-weightbearing and to elevate his leg. Plaintiff did not have medical insurance at the time of his accident and continues to be medically uninsured. Plaintiff moved in with his mother, Evelyn Troutman, so that she could help him perform the necessities of life. *Page 9 
13. Plaintiff hired legal counsel and an Industrial Commission Form 18 was filed on October 7, 2009. Subsequently, Plaintiff's counsel filed a Motion seeking to compel the acceptance of the claim and payment of benefits to Plaintiff. This motion was filed on November 11, 2009, requesting that Denross and NYSIF either accept the claim and/or provide meaningful information to the Industrial Commission regarding the basis of any denial. An Industrial Commission Form 61 was not timely filed.
14. On November 20, 2009, the Deputy Commissioner issued an order requiring that Defendant-Employer begin making payments immediately and/or notify the Commission no later than November 20, 2009, of the reasons for its refusal, and further that this compensable claim be submitted to the insurance carrier for payment. Neither Denross nor NYSIF appealed the order. Neither Denross nor NYSIF provided any of the information required by the November 20, 2009 order of Deputy Commissioner Phillips.
15. Mr. Barrett understood that he was to maintain workers' compensation insurance for any workers. Mr. Barrett believed that the workers on this project were covered by his carrier, New York State Insurance Fund (NYSIF). Denross paid premiums to NYSIF to include Plaintiff and other contracted workers for its workers' compensation insurance.
16. The certificate of insurance produced by NYSIF was not valid as of the date of the performance of the contract. As Becky Williams testified, the initial certificate of insurance provided by Denross did not confirm the existence of workers' compensation insurance. On October 8, 2009, five days after the injury occurred, Kapstone received a certificate of workers' compensation insurance provided by NYSIF, indicating the period that Denross and its workers' were covered was from August 19, 2009 through August 19, 2010. The certificate states that the policy applies "with respect to all operations in the state of New York, except as indicated *Page 10 
below" and contains an exclusion provision for "bodily injury occurring outside the state of New York."
17. Denross and NYSIF had an extended coverage history dating back to 1996, with the current coverage plan starting in 2004. Denross had not performed any contractual and/or maintenance work in New York since 2004, and with the exception of Sally Torres, none of its employees were actively working in the State of New York and had not done so since 2004.
18. Annual audits were conducted in person by NYSIF auditor, Stanley Hriczack, wherein Denross disclosed all information requested, including documentation that all jobs undertaken with the addresses of the jobs and employees outside of the state of New York. None of these audits or meetings provoked any concern or questions expressed by NYSIF and/or anyone on its' behalf, as to the nature of Denross' out of state operations.
19. Denross' workers' compensation insurance was always automatically renewed after the audit and the premium payments were received.
20. NYSIF provided numerous Certificates of Insurance administered by NYSIF for various projects throughout the United States, including projects in the states of Virginia, West Virginia, North Carolina, South Carolina, Alabama, Mississippi, and California. NYSIF never contacted Denross regarding his extensive work outside New York or to query as to why Denross would need certificates of insurance to be sent outside the state when his policy only covered operations conducted in New York.
21. NYSIF auditors, underwriters, and brokers had knowledge of the nature of Denross' business which included traveling from state to state and the knowledge that only clerical employees, such as Sally Torres, were working in New York state. *Page 11 
22. NYSIF auditor, Stanley Hriczack, stated in his deposition that he did not look into the nature of the business or out of state operations when performing his audit. Mr. Hriczack admitted that after he completes the audit, it is sent to underwriting and billing for final approval; and that none of these departments returned the Denross/Kapstone audit to him for clarification on out of state workers.
23. There is no place on NYSIF's application process for applicants, like Denross, to disclose if they employ workers out of state.
24. The payroll submitted by Denross to NYSIF included Plaintiff's wages and others involved in the Denross/Kapstone project for calculating Denross' workers' compensation premiums.
25. Denross paid Plaintiff and others involved in the Denross/Kapstone project on a New York payroll with New York withholdings.
26. Hal Friedman, NYSIF's extraterritorial affairs attorney, stated in his deposition that after a claim is filed, he ascertains where the accident took place and under what circumstances. Mr. Friedman admitted that no such investigations are performed when NYSIF is insuring a policyholder and collecting premiums on behalf of workers claimed. Mr. Friedman admitted that he did not see in the application form where the insured is allowed to list all locations for the operations of an insured's business. Mr. Friedman testified that if the employer states hypothetically, "well, wait a minute, Mr. Fund, we operate out of state," then and only then, will NYSIF's due diligence come into play. The competent evidence shows that NYSIF misled Denross through its continued business with Denross and its silence, into relying that its workers operating out of state were covered under the policy. *Page 12 
27. Mr. Friedman admitted that he is the individual responsible for granting "discretionary waivers" to individuals injured out of New York state. Mr. Friedman testified he always looks at underwriting records to determine if they contain language granting exceptions to certain policyholders, as he has seen this happen occasionally.
28. Underwriter, Gail Michaels, wrote on one of Denross' NYSIF Quote Calculation forms, "Broker-Bonnie assured has only clerical in New York. I did advise if there are any subs or Canadian employees working in the US, they will be picked up. They have not had any contracts in New York for quite sometime". Another communication with Ms. Michaels and the broker states, "please note that New York State operations involve office/clerical work only. If you need to add a contractor's class on, if any basis, that is fine."
29. Mr. Friedman provided Mr. Barrett with a discretionary waiver for his injuries, sustained in the catwalk fall with Plaintiff; however, Mr. Barrett was not a New York resident and had not employed contract workers in New York since 2004. Mr. Friedman testified Mr. Barrett was determined to be a New York State employee who had temporarily worked outside the state of New York. In contrast to this statement, the competent evidence of the record shows Mr. Barrett is a domicile of Canada, has not worked in the state of New York since 2004, and is not an employee of the State of New York based on NYSIF's criteria.
30. The Full Commission finds that NYSIF's representations to Denross regarding its workers' compensation policy were sufficient for Denross to reasonably believe that it had coverage from NYSIF for employees working outside the state of New York.
31. Dr. Furr remains the primary treating physician for Plaintiff. Dr. Furr testified that Plaintiff has not reached maximum medical improvement and remains under his care. *Page 13 
32. Ms. Troutman, Plaintiff's mother, testified she spent approximately eight to 10 hours per day performing services for her son. Ms. Troutman assisted her son with bathing and/or showering, laundry, frequent changing of bed sheets, baby powdering him due to excessive sweating, cooking and cleaning, assistance with ambulation, transportation to and from medical appointments, errands and taking care of Plaintiff's daughter's basic needs. Ms. Troutman provided wound care for Plaintiff's hip and toes. She drained blood off of his hip and dressed the blisters formed between his toes. Ms. Troutman was trained by a surgical team as to how to empty and drain Plaintiff's hip drain.
33. Ms. Troutman testified that she was forced to abandon her job in order to take care of Plaintiff, only working two days during the entire three-month period and earning only one check for $80.00.
34. Dr. Furr testified that he would have prescribed home health care for Plaintiff; however, Plaintiff informed Dr. Furr that he could not afford home health care. Dr. Furr testified to a reasonable degree of medical certainty, that all attendant care benefits described by Plaintiff and Ms. Troutman were reasonable and medically necessary. Dr. Furr further testified that he believed Ms. Troutman's all day availability to Plaintiff and active attendant care of eight to 10 hours per day, was reasonable and medically necessary. Dr. Furr stated that, "if he was in a Stanback Unit or a nursing home, they'd probably do that much or more."
35. Dr. Furr testified that Plaintiff will be permanently disabled as a result of his injury, indicating that Plaintiff's pain and swelling could be for life. Dr. Furr anticipates that Plaintiff has a 100% chance of having arthritis in the joint between his heel and talus and a 50% to 100% chance of having arthritis in the ankle and mid-foot joints. Dr. Furr anticipates that his gait will be affected for life, as he will not be able to have normal motion with respect to the hind *Page 14 
and mid foot when he walks, including pain associated with walking which will have a tendency to cause an antalgic gait. Dr. Furr testified that Plaintiff has a possibility of future surgery and treatment on his subtalar joint including an MRI, arthoscopy and injections. Dr. Furr testified that at the time of his deposition, Plaintiff was not at maximum medical improvement.
36. Dr. Furr testified that Plaintiff's injury would affect his ability to perform construction jobs in the future, as it would be difficult for him to carry items, climb ladders, be on a roof, walk on uneven surfaces, or do any activity that will require him to be on his foot which could cause swelling and pain in his right foot. He testified that he will likely need frequent breaks for elevation of his leg if he were in a position that required him to be on his feet and that he would provide Plaintiff with work restrictions of sedentary, with the ability to stand or elevate his leg, as needed.
37. Shawn Widrick, Director of Bayada Nurses in Salisbury, testified that the services Ms. Troutman provided to Plaintiff were most similar to services offered by a CNA. These nurses charge $23.00 per hour to the client, and are paid $8.00 to $11.00 per hour by Bayada. Mr. Widrick has conducted quarterly surveys to ensure that Bayada's wages are competitive in this regard; and he has found the wages to be lower than average for this geographic area. CNAs require 84 clinical hours to become licensed; however, Bayada does employ nonlicensed individuals for home healthcare if they are related to the patient recipient, i.e. mother and daughter. He testified that physicians determine how many hours of care each of their patients receive, and that he has no reason to disagree with Plaintiff's physician as to how much attendant care was reasonable and medically necessary.
38. Barbara Armstrong, RN, was hired by Defendant Kapstone, to review Plaintiff's medical records and provide her assessment as to the amount of attendant care he may have *Page 15 
needed. Ms. Armstrong stated that she has no reason to disagree with the services Ms. Troutman provided to her son. Ms. Armstrong admitted that it is the role of a physician to order care for patients.
39. Plaintiff is still out of work and has been unable to procure employment.
40. As Plaintiff worked for a period of less than 52 weeks and due to the brevity of Plaintiff's employment, methods one through three of determining Plaintiff's average weekly wage would not be fair and just and are not applicable in this case. As a result of the circumstances surrounding Plaintiff's employment, method four of determining Plaintiff's average weekly wage would not be fair to both parties. Therefore, the fifth method of compensation is the most fair and appropriate. Plaintiff's average weekly wage per this method is calculated at $1,120.00 and his workers' compensation rate is $747.04 per week.
41. This matter was unreasonably denied, as all parties stipulated that Plaintiff suffered a compensable workers' compensation claim under the North Carolina Workers' Compensation Act. Plaintiff's counsel has spent a considerable amount of time assisting Plaintiff in the procurement of indemnity, medical, and other benefits owed to Plaintiff. The Full Commission finds that Defendant NYSIF has engaged in stubborn unfounded litigousness in this matter.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. All parties are properly before the Industrial Commission. All parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act. The *Page 16 
Industrial Commission has jurisdiction over the parties and the subject matter of this case. N.C. Gen. Stat. § 97-2.
2. On October 3, 2009, Plaintiff sustained compensable injuries by accident to his right heel, foot, right hip, ribs, and right knee. N.C. Gen. Stat. § 97-2(6).
3. Defendant Denross Contracting, U.S., Inc., was the duly-qualified employer at the time of the accident and is subject to the North Carolina Workers' Compensation Act, having employed the requisite number of employees to be bound under the provisions of said Act at the time of the incident. N.C. Gen. Stat. § 97-2.
4. When determining whether an alleged employee is considered to be an independent contractor, and not an employee of the principal, the North Carolina Supreme Court outlined the salient factors inHayes v. Elon College, 224 N.C. 11, 29 S.E.2d 127 (1944). The Court instructed that an independent contractor:
 "(1) Is engaged in an independent business, calling, or occupation; (2) Is to have the independent use of his special skill, knowledge, or training in the execution of the work; (3) Is doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis; (4) Is not subject to discharge because he adopts one method of doing the work rather than another; (5) Is not in the regular employ of the other contracted party; (6) Is free to use such assistants as he may think proper; (7) Has full control over such assistants; and (8) Selects his own time."
The presence of no particular one of these indicia is controlling. Nor is the presence of all required. Id.
5. Based on a preponderance of the evidence, the Full Commission concludes that Plaintiff did not have the ability to select his own time, received travel and accommodations paid for by Denross, worked at a wage designated by Denross and was under the supervision of Denross as Plaintiff was informed he could continue to work upon satisfactory performance. *Page 17 
Plaintiff was an employee of Defendant-Employer, Denross Contracting, U.S., Inc., and an employee-employer relationship existed between Plaintiff and said Defendant-Employer at the time of Plaintiff's accident. Defendant-Employer Denross was insured at that time by NYSIF. N.C. Gen. Stat. § 97-2.
6. Defendant Kapstone was not a principal contractor pursuant to N.C. Gen. Stat. § 97-19 and was not required to obtain a valid certificate of insurance before the performance of the contract with Denross.
7. While Defendant NYSIF may be covered under sovereign immunity is some matters, it is not covered under sovereign immunity in matters before the New York State Court of Claims or in matters of workers' compensation. N.Y. Workers' Comp. Law § 76 (McKinney 2011); N.Y. Workers' Comp. Law § 142 (McKinney 2011); Commissioners of State Insur. Fund v.Herbery J. Low, 138 N.Y.S.2d 437, 285 A.D. 525 (1955). As to workers' compensation, NYSIF is a managed fund, competing on the same basis with private insurance companies, and the liability of the fund is in all respects the same as the liability of any other insurance carrier and is established by like proof.Commissioners of State Ins. Fund v. Dinowitz,39 N.Y.S.2d 34. (1942); See also Fisher v. Genesee Const.Co., 187 A.D. 850, 176 N.Y.S. 86 (1919). Defendant NYSIF has the same characteristics as any insurance carrier for all practical purposes *Page 18 
and was intended to be treated the same as a private carrier for insurance purposes. Commissioners of State Insur. Fund v.Herbery J. Low, 138 N.Y.S.2d 437, 285 A.D. 525 (1955). The rights and obligations of the NYSIF are to be treated "as separate and apart from general liabilities of the State." Id. at 441. For these reasons, the Full Commission finds that NYSIF was not protected by sovereign immunity as it relates to this workers' compensation claim.
8. As NYSIF waived sovereign immunity by contracting with Denross to provide workers' compensation insurance to Denross and provided compensation for Mr. Barrett's claim arising from the same work related injury, the Full Commission finds based upon a preponderance of the evidence that NYSIF was not protected by sovereign immunity and that Denross was covered by NYSIF at the time of Plaintiff's injury. Therefore, NYSIF shall become the Carrier on the risk in this case retroactively and continuing.
9. The law of estoppel applies in workers' compensation cases as in all other cases. Hughart v. Dasco Tranp., Inc.,167 N.C. App 685, 606 S.E.2d 379 (2005). The asserting party has the burden of proving estoppel. Craver v. Dixis Furn.Co., 115 N.C. App. 570, 447 S.E.2d 789 (1994). It is not necessary that the asserting party show bad faith, fraud, or intent to deceive. Id. The asserting party must show that Defendant NYSIF engaged in conduct or behavior, including silence, upon which the asserting party reasonably relied and which induced the claimed harm. Carroll v. Daniels, 327 N.C. 616, 398 S.E.2d 325 (1990). Based upon a preponderance of the evidence, including the fact that NYSIF provided compensation to Mr. Barrett for his injuries as a result of the same accident resulting in Plaintiff's injuries, NYSIF is estopped from denying workers' compensation insurance coverage for Plaintiff's compensable injury by accident. *Page 19 
10. Results fair and just within the meaning of the statute consist of such average weekly wages as will most nearly approximate the amount which the injured employee would be earning were it not for the injury. N.C. Gen. Stat. § 97-2(5).
11. As Plaintiff worked for a period of less than 52 weeks and due to the brevity of Plaintiff's employment, methods one through three of determining Plaintiff's average weekly wage would not be fair and just and are not applicable in this case. N.C. Gen. Stat. § 97-2(5). As a result of the circumstances surrounding Plaintiff's employment, method four of determining Plaintiff's average weekly wage would not be fair to both parties. Therefore, the fifth method of compensation is the most fair and appropriate. Plaintiff's average weekly wage per this method is calculated at $1,120.00 and his workers' compensation rate is $747.04 per week. N.C. Gen. Stat. § 97-2(5). Payment of these indemnity benefits has been unreasonably and untimely denied, therefore, Defendants are subject to a penalty of 10% for payment of these outstanding benefits. N.C. Gen. Stat. § 97-18(j).
12. As a result of Plaintiff's compensable injury by accident on October 3, 2009, Plaintiff is temporarily totally disabled. Plaintiff is entitled to have Defendant-Carrier, NYSIF, pay temporary total disability compensation at the rate of $747.04 per week to Plaintiff from October 3, 2009, and continuing until Plaintiff returns to suitable employment. N.C. Gen. Stat. § 97-29.
13. As a result of Plaintiff's compensable injury by accident on October 3, 2009, Defendant-Carrier, NYSIF, shall pay for the medical expenses and medical treatment provided for Plaintiff's injury by accident. Defendant-Carrier, NYSIF, shall provide for and pay for Plaintiff's related medical expenses and treatment for so long as such treatment tends to effect a cure, provide relief or lessen Plaintiff's period of disability. N.C. Gen. Stat. § 97-25. Dr. Stephen Furr is designated *Page 20 
as Plaintiff's treating physician and shall assume the management of his medical treatment. N.C. Gen. Stat. §§ 25 and 29. Payment of these medical expenses has been unreasonably and untimely denied, therefore; Defendants are subject to a penalty of 10% for payment of these outstanding medical expenses. N.C. Gen. Stat. § 97-18(j).
14. As a result of Plaintiff's compensable injury by accident on October 3, 2009, Ms. Troutman is entitled to have Defendant-Carrier, NYSIF, make payment for attendant care services rendered to Plaintiff from October 4, 2009 to December 26, 2009 at a rate of $11.00 per hour for nine hours per day. N.C. Gen. Stat. § 97-25. Payment of these attendant care benefits has been unreasonably and untimely denied. Therefore, Defendant NYSIF is subject to a penalty of 10% for payment of these outstanding expenses. N.C. Gen. Stat. § 97-18(j).
15. As Defendant NYSIF's denial of this claim was unreasonable and Defendant NYSIF engaged in stubborn unfounded litigiousness, Defendant NYSIF is to pay all costs, expenses, including a reasonable attorney's fee to Plaintiff's counsel. Plaintiff's counsel is entitled to 25% of all accrued and past due benefits owed to Plaintiff not to be deducted from the sums due Plaintiff. N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendant-Carrier, NYSIF, shall pay temporary total disability compensation at the rate of $747.04 per week to Plaintiff from October 3, 2009, and continuing until Plaintiff returns to suitable employment. *Page 21 
2. Plaintiff's average weekly wage is $1120.00 and his workers' compensation rate is $747.04 per week. Payment of these indemnity benefits has been unreasonably and untimely denied, therefore; Defendants are subject to a penalty of 10% for payment of these outstanding benefits. N.C. Gen. Stat. § 97-18(j).
3. Defendant-Carrier, NYSIF, shall pay for the medical expenses and medical treatment provided for Plaintiff's injury by accident. Defendant-Carrier, NYSIF, shall continue to provide for and pay for Plaintiff's related medical expenses and treatment for so long as such treatment tends to effect a cure, provide relief or lessen Plaintiff's period of disability. Dr. Stephen Furr is designated as Plaintiff's treating physician and shall assume the management of his medical treatment. Payment of these medical expenses has been unreasonably and untimely denied, therefore; Defendants are subject to a penalty of 10% for payment of these outstanding medical expenses.
4. Defendant-Carrier, NYSIF, shall pay Evelyn Troutman for attendant care services rendered to Plaintiff from October 4, 2009 to December 26, 2009, at a rate of $11.00 per hour for nine hours per day. Payment of these attendant care benefits has been unreasonably and untimely denied. Therefore, Defendants are subject to a penalty of 10% for payment of these outstanding expenses.
5. This matter was unreasonably defended by Defendants, and Defendant NYSIF shall pay to Plaintiff's counsel a reasonable attorney's fee of 25% of all accrued and past due benefits owed to Plaintiff not to be deducted from the sums due Plaintiff.
6. Defendants shall pay to Plaintiff's counsel 25% of all future indemnity benefits paid to Plaintiff, to be deducted from the compensation owed Plaintiff.
7. Defendants are to pay all costs and expenses incurred in this litigation. *Page 22 
8. Penalty Hearing 2483, including individually named persons, is dismissed with prejudice.
This the ___ day of October, 2011.
 S/_____________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/_____________________ DANNY L. McDONALD COMMISSIONER
 S/_____________________ BERNADINE BALLANCE COMMISSIONER

 *Page 1